F. H. PENDLETON, ex'r, v. JOHN H. DALTON.

*Executor—Estoppel—Statute of Limitations—Specific Performance—Statute of Frauds.*

1. Where a plaintiff sues as executor, the production of letters testamentary issued to him is sufficient to show that the testator's right of action has become vested in him. It is not necessary to annex a copy of the will to the letters, when the provisions of the will are not involved in the prosecution of the action.

2. Where a bill in equity, filed under the former system of procedure by the vendee, to enforce the specific performance of a contract to convey land, and also praying for general relief, was dismissed, it was held that such dismissal was not an estoppel to an action brought under The Code to recover a sum of money alleged to have been paid in pursuance of said contract as a part of the purchase money for the land.

3. Both legal and equitable rights may now be administered in one and the same action. Therefore, if an action is brought for the specific performance of a parol contract to convey land, to which the vendor pleads the statute of frauds, and it appears that a portion of the purchase money has been paid, the court will give judgment against the vendor for the amount which he has received.

4. A court may refuse, for equitable reasons, to compel specific performance of a contract legally binding, and leave the party to his remedy in the recovery of damages for its violation.

5. Where a defendant has successfully resisted the specific performance of a contract, he will not be allowed to set up such contract as binding in order to defeat an action brought to recover money paid in pursuance of said avoided contract.

6. Where the pendency of a former action is relied on to stop the statute of limitations, it must appear that it was between the same parties, and for the same cause of action.

(*Granbery* v. *Mhoon*, 1 Dev., 456; *Roanoke Navigation Co.* v. *Green*, 3 Dev., 434; *London* v. *Railroad Co.*, 88 N. C., 584; *Murdock* v. *Anderson*, 4 Jones Eq., 77; *Chambers* v. *Massey*, 7 Ired. Eq., 286; *Bank* v. *Harris*, 84 N. C., 206; *Willie* v. *Womble*, 90 N. C., 254; *Nichols* v. *Freeman*, 11 Ired., 99, cited and approved).

CIVIL ACTION tried before *Shipp, Judge*, and a jury, at Spring Term, 1884, of the Superior Court of IREDELL county.

The facts appear in the opinion.

In deference to His Honor's ruling, the plaintiff took a nonsuit and appealed.

*Mr. D. W. Furches*, for the plaintiff.
*Messrs. Clement & Gaither*, for the defendant.

SMITH, C. J.   Placebo Houston died in the year 1859, seized and possessed of a large and valuable tract of land in the county of Iredell, and leaving a will, since admitted to probate, wherein he appointed two executors, of whom the defendant, John H. Dalton, alone accepted the trusts and took the oath prescribed by

law. In one of the clauses of the instrument he gives this direction and authority:

"My real estate to be sold, as my executors may deem best for the interests of the estate."

On the 18th day of October, 1862, an agreement was entered into by and between the plaintiff and the said John H. Dalton, under their respective hands and seals, wherein the latter covenants to convey to the former the land aforesaid, described by definite boundaries and its name, as the Houston tract or homestead, supposed to contain two thousand and twenty acres, with several reservations to be taken therefrom, at the price of twelve thousand dollars; to be reduced at the rate of six dollars per acre for all the excepted parts. It is unnecessary to state the provisions of the agreement in greater detail.

Some few months later, the defendant received funds from the plaintiff, which he says he understood were in part performance of the agreement, for which he gave a written acknowledgment in these words:

"Houstonville, 13th February, 1863. Received of Frederick H. Pendleton, for Dr. W. J. Pendleton of Louisa county, Virginia, six thousand and fifty-one dollars in Confederate bonds and Virginia sixes, and four thousand, nine hundred and forty-nine dollars in currency, making in all eleven thousand dollars, in part pay for the homestead tract of land, containing — acres, at six dollars per acre, belonging to the estate of P. Houston, deceased; and I bind myself, as executor of the said P. Houston, deceased, to make to Dr. William J. Pendleton, of Louisa county, Virginia, a good and lawful deed for the whole of the above homestead land, containing — acres. J. H. Dalton, Executor."

This receipt differs from the original contract in that it includes, as its subject-matter, the portions of the reserved land within the general boundaries, without any change in the price, and substitutes the said W. J. Pendleton in place of his son, who contracted in his own name, not in an assumed agency, and had entered into possession in December previous. During the same

year (1863) William J. Pendleton, as principal in the transaction, filed his bill in the court of equity of Iredell against the said Dalton, in which, making no reference to the original contract of October, 1862, and treating the written acknowledgment as alone containing the obligation, and set out as such, he asks for a decree for specific performance, and offers to pay the residue of the purchase money.

The answer sets out the agreement made in October, as in force unaltered, and asserts that the funds paid were understood to be in pursuance and part execution of its requirements, and so it was represented by the said F. H. Pendleton, who prepared the writing and brought it to him for his signature. It sets out as the true and only agreement, that made in October with the defendant in person.

The suit was removed to the Supreme Court, and upon the hearing, at January Term, 1867, dismissed with costs, the Court declaring: "We are satisfied that he (the defendant) signed it under the belief that the money paid was in part execution, by the purchaser, of the contract made a few months before, and he, on his part, had to some extent executed by putting the supposed purchaser in possession." *Pendleton y. Dalton*, Phil. Eq., 119.

Immediately after this disposition of the cause, another suit was brought in the same court of equity, at Spring Term, 1868, by the said F. H. Pendleton, in his own name, against the same defendant, to compel the specific performance of the contract of October, 1862, in which the receipt given in February was treated as a payment under it, in accordance with the ruling in the previous case. The bill further recited that the defendant had commenced and was prosecuting an action to dispossess him of the land, and asks that he be restrained from proceeding under it. The defence set up in the answer is fraud practiced by the plaintiff—a total failure of consideration—and that there is "no such subsisting contract between plaintiff and defendant as this Honorable Court will enforce under all the circumstances of the case."

The suit was transferred to Yadkin county, but before the hearing a recovery was effected in the ejectment action, and execution sued out to restore possession to said Dalton. To restrain its enforcement an order for an injunction was made at chambers by the judge, and the writ issued on November 21st, 1869. On application to vacate the restraining order and recall the writ made on December 18th, following, it was refused, and an appeal taken therefrom to this Court, when, at January Term, 1870, the ruling was reversed and the petition dismissed—the decree, when entered in the court below, adding the words "without prejudice." *Pendleton* v. *Dalton,* 64 N. C., 329.

The said William J. Pendleton then commenced a second suit in his own name in the Circuit Court of the United States for the District of North Carolina, in equity against the said John H. Dalton, at Fall Term, 1869, which, after the division of the State into separate districts, was transferred to the Circuit Court of the Western District. The object of this suit was to enforce execution of the contract of October, as entered into with the plaintiff, for whom his son was acting in making it, and to restrain action under the writ issued upon the recovery in ejectment.

The order for an injunction was granted and the writ issued in May, 1871.

The answer to the bill was filed on the rule day in July, but as it is not among the papers on file its contents are not known, nor is it material that they should be in the present controversy.

The death of the plaintiff was suggested at October Term, 1872, and leave given to make his heirs at law parties. This was not done, and the next year it was decreed that "the suit is abated."

Again on April 20, 1874, suit was instituted in the Superior Court of Iredell by William R. Pendleton and wife Julia, Walton Overton and wife Alice, and said Frederick H. Pendleton against the same defendant, John H. Dalton, wherein the *feme* plaintiffs and the said Frederick H. are alleged to be the heirs

and devisees of the said William J. Pendleton, and to have succeeded to the equitable estate acquired by him under the agreement of October, 1862, and therein representing that the said John H. acted, while using his own name and so covenanting in the writing, by the authority and on behalf of the deceased, as well as in using funds of his in the partial execution of the agreement, as shown in the acknowledgment given in February, they demand a conveyance of the land embraced in the agreement, offering to pay whatever, if any, amount of the purchase money may appear to be still due.

The answer reiterates the matters of defence set up in the answers in the previous suits, and relies upon the results of these suits as a bar to the present.

The judge of the district wherein is embraced the county of Iredell, having been before professionally connected with the subject-matter in controversy, the cause was removed to the Superior Court of Rowan and there tried and determined adversely to the plaintiff at Spring term, 1877.

Upon appeal to this court the judgment was reversed for an erroneous ruling, and a new trial granted. *Pendleton* v. *Dalton*, 77 N. C., 67.

The plaintiffs afterwards failed to comply with a rule requiring them "to justify the security to the prosecution bond," and the action was dismissed.

The present action is instituted in the name of the said John F. Pendleton as executor of his father against the said John H. Dalton, in both his personal and representative capacity, upon a summons issued on the 11th day of November, 1879, from the Superior Court of Iredell. The complaint, after stating the making of the contract contained in the paper-writing of February and the payment made under it, and without any reference to that of October preceding and the defendant's refusal to return the money, while repudiating the obligation, "demand judgment for eleven thousand dollars," the sum received, as shown in the receipt of February, 1883, with the interest thereon since accrued and the costs of the action.

.Several defences are relied on in the answer, as follows:

(I). The absence of evidences of the alleged will, necessary to vest a right of action in the plaintiff in his representative capacity.

(II). Falsehood and fraud in the transaction, by which, in the form of the receipt, an attempt was made to modify injuriously the agreement executed in October preceding.

(III). An estoppel resulting from the several unsuccessful actions to coerce the performance of each.

(IV). The bar of the statute of limitation, since the right, if any such exists, arose.

(V). A counter-claim for rents and profits accrued during defendant's occupancy and use of the premises.

Upon the trial before the jury at Spring term, 1884, and after hearing of the evidence contained in the records, as it has been summarily recapitulated, the court intimated an opinion against the plaintiff's ability to maintain his action, in submission to which he suffered a non-suit and appealed. It does not appear upon what ground the adversary opinion was based, and, therefore, the ruling must be considered in its relation to the legal objections interposed.

(I). The production of the letters testamentary issued to the plaintiff shows his representative relation and that the *testator's right to sue* has become vested in his executor. It was not necessary to annex a copy of the will to the letters, because the provisions of the will are not involved in the prosecution of the action. This is plain upon principle and authority. *Granbery* v. *Mhoon*, 1 Dev., 456; *Roanoke Nav. Co.* v. *Green*, 3 Dev., 434; *London* v. *Railroad Co.*, 88 N. C., 584.

(II). No estoppel arises out of the successive suits to compel specific performance and their termination, notwithstanding there is a prayer for general relief.

The suits, under our former divided jurisdictions, were in equity, and the compacts were not within the statute of frauds; and the refusal to give relief was founded upon other considera-

tions connected with their execution. Had they been unwritten and for this reason their enforcement resisted, the money paid in part execution was recoverable in an action at law, as money had and received to the plaintiff's use, and to a court of law the plaintiff would be remitted. It would be otherwise if the consideration consisted in something else than money which could not be replaced by a money payment, or if the claim was for improvements, in good faith put upon the premises, in the expectation of having the legal title. *Murdock* v. *Anderson*, 4 Jo. Eq. 77 ; *Chambers* v. *Massey*, 7 Ired. Eq. 286.

The redress, which must have been formerly sought in one and could not be in another tribunal, according to its jurisdiction, may now be had in one, and in a single action, if the complaint be sufficiently comprehensive to embrace it. *Bank* v. *Harris*, 84 N. C. 206.

If, therefore, a parol contract, which has been in part performed by the vendee, is sought to be enforced against the vendor and is resisted by him, as being void under the statute, the Court will now proceed to adjudge the return of what he has received, or compensation in value. *Wilkie* v. *Womble*, 90 N. C. 254. This is done when no legal obligation has been incurred, for the Court may refuse, for equitable reasons, to lend its aid in compelling specific execution of a contract legally binding, and leave the party to his remedy in the recovery of damages for its violation, the measure of which, as held in *Nichols* v. *Freeman*, 11 Ired. 99, would be the value of the land less the unpaid purchase money.

(III). The remaining objection is to the form of the action and the relief sought, and to its prosecution after so long a lapse of time.

Assuming an independent and new liability to have been incurred, as the plaintiff alleges, by the defendant's execution of the written memorandum in which he acknowledges a payment to him, as executor, it was denied and distinctly repudiated in the resistance offered to its enforcement in the suit brought by the testator in his lifetime and dismissed in 1867. Indeed the relief

then sought upon this alleged contract, was denied because the court considered it as a part execution of that of October and not a substitute for it.

If the plaintiff is now at liberty to treat it otherwise and as *imposing itself an obligation* (and such is the averment in the complaint), the right then accrued to bring an action for the breach of the contract, and to obtain compensation in damages therefor. The money paid under a valid subsisting agreement is not recoverable, as money had and received to the plaintiff's use, as it is when the agreement is voidable and is avoided under the statute of frauds, or for other reason in law rendering it such.

In the latter case, there being no legal obligation created by contract, and consequently no consideration, the law implies a contract to restore. It is otherwise when payment is in part performance of an obligation and the defendant fails to comply with his. In such case the remedy is by an action for a violated contract, and the recovery is commensurate with the damages occasioned by the breach.

The statute of limitation would have begun to run in 1867, at least, but for the suspending act which arrested it till January, 1870, and the second suit commenced between the same parties in 1869 and terminated in June, 1872.

The present suit is seven years later. The operation of the statute was not interrupted by the intervening suit of F. J. Pendleton against the defendant, founded upon the agreement of October, 1862, since it was not *between the same parties* nor for the *same cause of action*. Nor was it interrupted by the action of the heirs or devisees of W. J. Pendleton which commenced in April, 1874, and terminated in the spring of the same year in which the present suit was begun, because it is not for the *same cause of action and does not grow out of the same alleged contract*, or rest upon any similar ground for its support.

13

If the action could be maintained at all to get back the purchase money paid under a contract, it encounters the statutory bar and must fail.

There is no error, and the judgment must be affirmed.

No error.                           Affirmed.